| STATE OF INDIANA | ) | IN THE STEUBEN CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF STEUBEN | ) | CAUSE NO. _____ |

HCSPay, LLC,  )
                         )
        Plaintiff,  )
                         )
    v.  )
                         )
GENERAL MOTORS CORPORATION,  )
                         )
        Defendant.  )

## COMPLAINT FOR DAMAGES

Plaintiff, HCSPay, LLC ("HCS"), by counsel, for its Complaint for Damages against General Motors Corporation ("GM"), states as follows:

### PARTIES

1. HCS is a Delaware limited liability company with a principal place of business in Huntington Woods, Michigan, and conducts business in Indiana. HCS is a finance company that provides, among other financial services, accounts receivable factoring for small and midsize companies.

2. Upon information and belief, GM is a Delaware corporation with a principal place of business in Detroit, Michigan and conducts business in Indiana.

### JURISDICTION AND VENUE

3. This case arises from an Accounts Receivable Purchase Agreement dated August 30, 2005 (hereinafter referred to as "Purchase Agreement"), by and between HCS and Amcast Automotive of Indiana, Inc., d/b/a Amcast Automotive, Gas City and Amcast Automotive, Fremont ("Amcast"), wherein Amcast agreed to and did sell to HCS certain accounts receivables due to Amcast as a result of invoices Amcast issued to GM. This Court has jurisdiction over the

subject matter of this dispute because i) both parties to this lawsuit conduct business in Indiana and ii) HCS's purchase of the accounts receivables from Amcast, an Indiana corporation with a principal place of business in Fremont, Indiana, forms the genesis of this dispute.

4.    Venue lies in Steuben County because the dispute between the parties originates from HCS's business dealings with a Steuben County business, namely Amcast.

## BACKGROUND FACTS

5.    Upon information and belief, in August 2005, Amcast supplied wheels to GM and invoiced GM for such goods.

6.    Under the terms of the Purchase Agreement, HCS purchased unpaid GM Invoices totaling approximately $5.5 Million. True and accurate copies of the Purchase Agreement and the accompanying Sell Order, which is incorporated therein, are attached hereto collectively as Exhibit A.

7.    Expected payment dates on the unpaid GM Invoices ranged from November 3, 2005 through and including January 3, 2006, with total payments amounting to $5,499,932.24. A true and accurate listing of the unpaid GM Invoices is attached hereto as Exhibit B.

8.    On August 26, 2005, Amcast notified GM in writing of Amcast's assignment of "all General Motors Corporation (GM) invoices to HCSPay, LLC", and directed GM to remit all payments due Amcast in accordance with the instructions set forth therein. A true and accurate copy of Amcast's written notification to GM is attached hereto as Exhibit C.

9.    After receiving Amcast's written notification of its assignment of all GM Invoices to HCS, GM sent to HCS its Electronic Funds Transfer ("EFT") Authorization Form for HCS's completion so that GM could make its invoice payments directly to HCS. HCS's authorized representative signed and returned the EFT Authorization Form to GM on August 31, 2005. A

692607/18465-1                                                    2

true and accurate copy of the fully executed GM EFT Authorization Form is attached hereto as Exhibit D.

10.    On September 6, 2005, HCS filed its UCC Financing Statement with the Indiana Secretary of State. Said Financing Statement covers the subject GM Invoices. Thus, HCS is the owner of the unpaid GM Invoices and all amounts due with respect to them. True and accurate copies of HCS's UCC Financing Statement and related documents are attached hereto collectively as Exhibit E.

11.    Despite Amcast's valid assignment of the GM Invoices to HCS, and despite HCS's valid notice of such assignment to GM, GM made payments on certain invoices directly to Amcast following receipt of HCS's notice.

12.    On December 5, 2005, Amcast filed bankruptcy under Chapter 11 in the U.S. Bankruptcy Court in the Southern District of Indiana.

13.    Thereafter, in breach of Amcast's valid assignment of the GM Invoices to HCS, GM refused to make payment to HCS on the unpaid GM Invoices even though GM had previously approved said invoices for payment.

14.    GM has failed to pay to HCS the amounts due, pursuant to the GM Invoices in the amount of $5,499,932.24.

WHEREFORE, Plaintiff, HCSPay, LLC, by counsel, respectfully requests that this Court enter judgment in its favor in a manner consistent with this Complaint, including: (a) compensatory damages in an amount not less than $5,499,932.24; (b) all prejudgment and postjudgment interest allowable by law; and (c) all other just and appropriate relief.

692607/18465-1                                         3

Respectfully Submitted,

Amy L. Cueller, Atty. No. 15052-49
BOSE MCKINNEY & EVANS LLP
2700 First Indiana Plaza
135 North Pennsylvania Street
Indianapolis, IN 46204
(317) 684-5000 (phone)
(317) 684-5173 (fax)

Counsel for Plaintiff, HCSPay, LLC

Exhibit A

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This Accounts Receivable Purchase Agreement ("Agreement") is made as of August 30, 2005 by and between Amcast Automotive of Indiana, Inc., dba Amcast Automotive, Gas City and Amcast Automotive, Fremont, an Indiana corporation ("Supplier") and HCSPay, LLC ("HCSPay"), a Delaware limited liability company.

### Recitals

A. Supplier provides goods and/or services to companies (each, a "Buyer") that participate in the HCSPay Early Payment Program ("Program") that result in amounts owing from Buyer to Supplier (each, a "Receivable").

B. Supplier desires to participate in the Program and sell to HCSPay Receivables payable by a Buyer to Supplier.

C. Supplier has instructed each Buyer to remit payment for all Receivables to HCSPay in accordance with the terms of a separate letter to Buyer ("Remittance Instructions").

D. Supplier has delivered access information for each Buyer's secure website (each, a "Buyer's Database") to permit HCSPay to access real time data relative to the Receivables that are payable by each Buyer to Supplier.

E. HCSPay has notified all financial institutions having a security interest in the Receivables (each, a "Lender") of Supplier's participation in the Program and its sale of Receivables to HCSPay in accordance with the terms of a separate letter from each Lender (each, a "Lender Consent"). HCSPay may waive this requirement if Supplier provides HCSPay with sufficient written evidence, as determined by HCSPay in its sole discretion, that entry into and usage of the Program is permitted by the Supplier's secured lender agreements and covenants.

F. HCSPay or its designee maintains a secure website ("HCS Website") that permits Supplier to access real time data relative to the outstanding Receivables of Supplier from each Buyer, including whether such Receivables have been purchased by HCSPay and, if so, the date ("Purchase Date") upon which HCSPay purchased such Receivables.

G. Supplier has given a standing offer to either sell to HCSPay (i) all Receivables payable by a given Buyer ("All-The-Time Program") or (ii) such Receivables payable by a given Buyer as selected by Supplier through HCS Website ("Any-Time Program") in accordance with instructions given by Supplier to HCSPay in a separate letter (the, "Sell Order") with respect to such Buyer.

The parties agree as follows:

1. On each day upon which HCSPay is open for business ("Business Day"), HCSPay or its designee shall endeavor to transfer information regarding Receivables from each Buyer's Database to HCS Website. After such Receivables ("Available Receivables") are listed on HCS Website, they are eligible for purchase by HCSPay pursuant to the terms of this Agreement. HCSPay reserves the right to declare Available Receivables of any given Buyer as ineligible for purchase under the Program, as determined in its sole discretion. Each of the parties to this Agreement intends that each transfer of Purchased Receivables (as hereinafter defined) under this Agreement constitutes an absolute and irrevocable sale of Purchased Receivables to HCSPay and provides HCSPay with the full benefits of ownership of the Purchased Receivables. Furthermore, Supplier relinquishes all title and control over the Purchased Receivables upon the transfer of each such Purchased Receivable under this Agreement.

   It is, further, not the intention of Supplier or HCSPay that the conveyance of the Purchased Receivables by Supplier be deemed a grant of a security interest in the Purchased Receivables by Supplier to HCSPay to secure a debt or other obligation of Supplier. However, in the event that, notwithstanding the intent of the parties, any Purchased Receivable(s) are determined to be property of Supplier's bankruptcy estate, then without being in derogation of the parties' intention that the sale of Purchased Receivables hereunder shall constitute a true sale thereof (i) this Agreement also shall be deemed to be and hereby is a security agreement within the meaning of Article 9 of the Uniform Commercial Code of the State of New York, and (ii) the conveyance by Supplier provided for in this Agreement shall be deemed to be a grant by

1

BH01\549787.9
ID\BJC

Supplier to HCSPay and its assigns of, and Supplier hereby grants to HCSPay and its assigns, a security interest in and to all of Supplier's right, title and interest in, to and under the Purchased Receivables to secure (1) the rights of HCSPay hereunder and (2) a loan by HCSPay to Supplier in the amount of the related Purchase Price of the Purchased Receivable(s) sold by it. Supplier and HCSPay shall, to the extent consistent with this Agreement, take such actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Purchased Receivables, such security interest would be deemed to be a perfected security interest of first priority in favor of HCSPay under applicable law and will be maintained as such throughout the term of this Agreement.

2. If Supplier participates in the All-The-Time Program, HCSPay may purchase on each Business Day such Available Receivables, as determined by HCSPay in its sole discretion ("Purchased Receivables"). The Purchase Date for such Purchased Receivables shall be no later than two (2) Business Days after the date the Receivables become Available Receivables.

3. If Supplier participates in the Any-Time Program, Supplier must identify those Available Receivables that it desires to sell to HCSPay ("Offered Receivables"). Unless other arrangements are made, the identity of Offered Receivables shall be evidenced by Supplier's "point and click" election on HCS Website. The purchase of some or all of the Offered Receivables (that HCSPay elects to make in its sole discretion) shall also constitute Purchased Receivables. The Purchase Date for such Purchased Receivables shall be no later than two (2) Business Days after the date Supplier identifies the Offered Receivables.

4. The purchase price for a Purchased Receivable ("Purchase Price") shall be as set forth on the HCS Website on the applicable Purchase Date, which shall be calculated based upon the outstanding principal balance of the Offered Receivables (with respect to an Any-Time Program) or Available Receivables (with respect to an All-The-Time Program), as applicable, less the applicable discount calculated using the agreed upon discount rate as set forth in the Sell Order ("Discount Rate") and adjusted for any Reimbursement Amounts (as hereinafter defined) plus interest owed to HCSPay (see paragraph 18) as of the Purchase Date as adjusted pursuant to the Sell Order. Supplier may review and identify the Purchased Receivables on HCS Website. All funds payable to or for the account of Supplier pursuant to this Agreement shall be sent in accordance with instructions provided or approved by Supplier. HCSPay is not responsible for delays in the electronic transfer of funds.

   Effective simultaneously with the payment by HCSPay of the Purchase Price to the Supplier with respect to any Purchased Receivable, with no further action required by any party, the Supplier sells, assigns, transfers, conveys, and delivers to HCSPay, without recourse (except as expressly provided for in this Agreement), and HCSPay purchases from the Supplier, all of the Supplier's right, title, and interest in and to such Purchased Receivables.

5. In the event HCSPay or its designee receives any payment from Buyer with respect to an Available Receivable that is not a Purchased Receivable, then HCSPay shall remit such payment, or cause such payment to be remitted, to Supplier when the payment proceeds are deemed immediately available funds by the financial institution used by HCSPay or its designee.

6. After the execution of this Agreement, the Receivables of any given Buyer shall be eligible for purchase by HCSPay upon satisfaction of the following conditions precedent: (a) the execution by Supplier of a Sell Order with respect to such Buyer, (b) the acceptance of the Remittance Instructions by such Buyer, (c) the initial successful transfer of information from the Buyer's Database to HCS Website, and (d) if required, the execution of a Lender Consent by each Lender with respect to such Buyer's Receivables.

7. Except as provided in the Sell Order, HCSPay shall provide Supplier with at least 14 days prior written or electronic notice of (a) changes to the terms and conditions governing the Program set forth in this Agreement and in the Sell Order, and (b) the effective date of such changes, provided that no amendment or modification of this Agreement shall be effective without the written consent of Supplier and HCSPay.

8. HCSPay and its assigns are hereby authorized to pre-file a UCC financing statement against Supplier in the State of Indiana covering the following assets: "Certain Accounts purchased by Secured Party from Debtor pursuant to an Accounts Receivable Purchase Agreement dated as of August 30, 2005." The description of collateral in such financing statement may also include a reference to a list maintained by HCSPay or a third party which identifies the specific Receivables sold by Supplier to HCSPay pursuant to this Agreement.

2

9.  Receivables are purchased without recourse to Supplier, except that if (a) any representation or warranty made by Supplier to HCSPay with respect to any Purchased Receivable is false or incorrect as of the Purchase Date of such Purchased Receivable, or (b) after the Purchase Date, the outstanding principal balance of a Purchased Receivable is (i) reduced as a result of any defective or rejected or returned goods or services, any discount or any adjustment or otherwise by Supplier (other than cash collections on account of the Purchased Receivables), or (ii) reduced or canceled as a result of any setoff in respect of any claim by any person or entity (whether such claim arises out of the same or a related transaction or an unrelated transaction) (each, a "Reimbursement Event"), then, with respect to each such Purchased Receivable, the Supplier shall pay to HCSPay an amount (the "Reimbursement Amount") equal to the amount, if any, of the outstanding principal balance of such Purchased Receivable (calculated before giving effect to the applicable reduction or cancellation) and HCSPay shall assign such Purchased Receivable to Supplier after HCSPay receives the applicable Reimbursement Amount.

10. Supplier hereby represents and warrants to HCSPay that as of the Purchase Date of any Purchased Receivable, each such Purchased Receivable:

    (a)  is a bona fide and existing obligation of the Buyer arising out of the final sale of goods and/or the completed rendering of services by Supplier in the ordinary course of business and is presently due and owing according to its terms;

    (b)  is solely owned by Supplier who has the right to sell, assign and transfer the Purchased Receivable;

    (c)  arises from goods delivered or services rendered that do not violate any law, rule, regulation or agreement with any party;

    (d)  is free from any and all encumbrances, liens, attachments, claims, security interests and rights of others (other than of a Lender) of any kind, other than the rights of HCSPay under this Agreement; and

    (e)  is the correct amount, and is free of any dispute, deduction, claim, credit, offset, return, defense or counterclaim of any kind, whether or not any of the foregoing is bona fide or relates to a Purchased Receivable that is or is not (a) paid in full, and/or (b) subject to this Agreement.

11. Supplier hereby represents and warrants to HCSPay that, as of the Purchase Date and each Purchase Date thereafter, Supplier is:

    (a)  solvent;

    (b)  duly organized, validly existing and in good standing under the laws of its state of incorporation, formation or organization;

    (c)  duly qualified to do business and holds all power and governmental authorizations and approvals required to carry on its business in each jurisdiction in which its business is conducted;

    (d)  not subject to any action, suits or proceedings pending, or to the best of Supplier's knowledge threatened, against Supplier or any of its properties, in or before any court, arbitrator or other body, that could reasonably be expected to have a material adverse effect on this Agreement and the purchase transactions contemplated hereby; and

    (e)  not in default with respect to any order of any court, arbitrator or governmental body.

12. Supplier further represents and warrants to HCSPay that the execution and delivery by Supplier of this Agreement and each of the other documents executed between Supplier and HCSPay:

    (a)  is duly authorized by all necessary action on its part and has been duly executed and delivered by Supplier;

    (b)  does not contravene or violate any Supplier organizational documents, or any applicable law, rule, regulation, contract or instrument by which it or any of its property is bound;

3

(c) does not contravene or violate any writ, order, judgment, award, injunction or decree binding on or affecting it or its property; and

(d) will not result in the creation or imposition of any lien, encumbrance or adverse claim on assets of Supplier, other than in favor of HCSPay and its assigns under this Agreement.

13. Supplier is solely responsible for maintaining the security of the information provided to it for accessing HCS Website. Supplier hereby releases HCSPay from any loss, liability or damages incurred by Supplier for the unauthorized use by Supplier or any person to whom Supplier provides the password to HCS Website or otherwise provides access to HCS Website or any person who receives such password or such access directly or indirectly from the Supplier or any person to whom Supplier provides such password or such access. Supplier acknowledges that conditions relating to the use of HCS Website by persons (including Lenders) to whom Supplier provides passwords are posted on HCS Website.

14. Supplier shall mark its books and records to indicate that Purchased Receivables have been sold to HCSPay and will account for the transfer of Purchased Receivables as a sale in its accounting records. Each Lender has (a) access to Supplier's computer records relating to the Receivables, and (b) executed and delivered to HCSPay a Lender Consent.

15. Supplier shall:

(a) Hold any payments sent in error directly to Supplier from a Buyer on account of Purchased Receivables in trust for the benefit of and immediate payment to HCSPay;

(b) Pay and discharge prior to delinquency all taxes, assessments, levies and other governmental charges imposed upon and payable by Supplier;

(c) Execute and deliver any document that HCSPay may reasonably request to carry out the purposes of this Agreement, including resolutions certifying the authority of any person signing this Agreement or any document contemplated by the terms of this Agreement; and

(d) Deliver all communications to and from each Buyer and Lender that materially adversely impacts the terms and conditions under which Buyer remits payment for Receivables to HCSPay.

16. Supplier hereby appoints HCSPay as the true and lawful attorney-in-fact of Supplier, with full power of substitution, and hereby authorizes and empowers HCSPay in the name of and on behalf of Supplier, to take such actions, and execute and deliver such documents and instruments as HCSPay deems proper in order to make collection of and otherwise realize the benefits of any Purchased Receivable, including but not limited to the endorsement of any check or money order delivered to HCSPay from the Buyer.

17. Supplier will promptly give notice to HCSPay of any change in its name, identity, corporate structure or jurisdiction of organization or other information contained in this Agreement or any document executed pursuant hereto. Supplier agrees to sign all instruments and other documents requested by HCSPay in connection with the foregoing changes. In addition, Supplier will promptly give notice to HCSPay should there be any default or breach of its secured lender covenants that has not been waived by the applicable Lender or cured within the applicable cure period, if any.

18. Upon the occurrence of a Reimbursement Event, the Supplier shall pay to HCSPay the applicable Reimbursement Amount within one (1) Business Day after demand by HCSPay. In addition, the Supplier shall pay to HCSPay an interest charge equal to the annualized rate (utilized in setting the Discount Rate applicable to the Purchased Receivable related to the applicable Reimbursement Amount) plus 2% from the due date of the Reimbursement Amount until such amount is paid in full. If Supplier fails to pay the Reimbursement Amount plus applicable interest, if any, in a timely fashion, HCSPay shall have the right to immediately provide notice of such default to any Lender or Buyer and to exercise any of its rights under this Agreement, under law or in equity. Supplier shall not be required to pay interest at a rate greater than the maximum allowed by law and any interest payment received by HCSPay which exceeds the maximum rate shall be automatically credited upon the unpaid principal balance of the Reimbursement Amount.

4

HCSPay shall be entitled, in its sole discretion, to elect to obtain payment of the Reimbursement Amount and any applicable interest charge by either (a) crediting the Reimbursement Amount against the Purchase Price otherwise payable to the Supplier with respect to other Purchased Receivables, or (b) electing to purchase Available Receivable(s) from the Supplier which have a Purchase Price (or aggregate Purchase Price) which is equal to or greater than the Reimbursement Amount and crediting the amount due to HCSPay against such Purchase Price; provided, however, that in no event shall the failure of HCSPay to receive payment of any Reimbursement Amount by either of the foregoing methods relieve the Supplier of its obligation to pay the Reimbursement Amount and applicable interest charge. If HCSPay elects to purchase Available Receivable(s) pursuant to subsection (b) above, then the Supplier shall sell to HCSPay the Available Receivable(s) selected by HCSPay in accordance with the terms of this Agreement.

19. Supplier will not assign (by operation of law or otherwise), dispose of, grant any option with respect to, or create or suffer to exist any adverse claim upon any Purchased Receivable or the proceeds thereof or any contract under which any Purchased Receivable arises, or assign any right to receive income with respect thereto, except for the interest of HCSPay (or any of its assigns) and Supplier will defend the right, title and interest of HCSPay (or any of its assigns) in any of the foregoing property against all claims of third parties.

20. Absent a Reimbursement Event, this Agreement may be terminated by either party upon thirty (30) days' prior written notice to the other party. No such termination shall in any way affect the respective rights and obligations of the parties with respect to any Purchased Receivables including the repurchase, indemnification and expense reimbursement obligations of Supplier.

21. Upon a Reimbursement Event, HCSPay shall have the right, but not the obligation to exercise any or all of its rights hereunder. Failure to exercise any right shall not be deemed a waiver of rights or any future rights.

22. The terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors, and assigns. Supplier may not assign any of its rights or obligations hereunder without the prior written consent of HCSPay. HCSPay may assign any or all of its rights or obligations hereunder without the consent of Supplier.

23. The unenforceability for any reason of any provision of this Agreement or any other document shall not impair or limit the operation or validity of any other provision of this Agreement or any other agreements now or hereafter existing among Supplier and HCSPay.

24. This Agreement is governed by the law of the State of New York. THE PARTIES HERETO HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY.

25. This Agreement and the Sell Order contain all of the terms and conditions relating to the subject matter of this Agreement. No other promises or representations have been made by any party to the other party.

26. Supplier shall indemnify, protect, defend and hold harmless HCSPay and its respective successors, assigns, affiliates, directors, officers, agents, attorneys and employees from and against all losses, liabilities, claims, damages, fees, judgments and expenses, including reasonable attorney's fees, incurred by or imposed upon them at any time by reason of: (a) any representation or warranty made by Supplier being false or incorrect when made; or (b) Supplier's failure to comply with any of the terms of this Agreement or any other document executed in support of this Agreement; excluding, however, in each case, losses, liabilities, claims, damages, fees, judgments and expenses to the extent the same includes losses in respect of Purchased Receivables that are uncollectible on account of the insolvency, bankruptcy or lack of creditworthiness of the related Buyer. Supplier shall reimburse HCSPay for all out-of-pocket expenses incurred in the enforcement of this Agreement.

5

27. Unless otherwise specifically provided herein, any notice or other communication made or given with respect to or pursuant to this Agreement shall be in writing and may be personally served or sent by a nationally recognized overnight courier service and shall be deemed to have been given when delivered if personally served, or the next business day, if sent by overnight courier service. Notices shall be. addressed to the parties as follows: (a) if to HCSPay -- 26321 Woodward Avenue, Huntington Woods, Michigan 48070, Attention: Credit Manager, and (b) if to Supplier -- 706 E. Depot Street, Fremont, Indiana 46737 Attention: Curt Hoenie or to such other address as the receiving party may designate from time to time. All notices permitted to be sent to Supplier under this Agreement may also be sent to Curt Hoenie whose e-mail address is curt.hoenie@amcast.com.

28. Supplier agrees to take such actions as are necessary on its part to ensure that the facts and assumptions set forth in the Officer's Certificate attached hereto as Exhibit A remain true and correct at all times.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

6

BH01\549717.9
ID\BJC

Supplier and HCSPay have executed this Agreement as of the date first written above:

Amcast Automotive of Indiana, Inc.
dba Amcast Automotive, Gas City
and Amcast Automotive, Fremont

Signature: _____

Print Name: Patrick Daugherty

Title: President

HCSPay, LLC

Signature: _____

Print Name: Charlie Gagne

Title: Chief Financial Officer

As Secretary of Amcast Automotive of Indiana, Inc., I certify that the resolutions of the Board of Directors authorizing the above signer to sign this Agreement are still in effect and have not been revoked or amended and that the above signature is the signature of the officer authorized to sign for Supplier by virtue of said resolutions.

Signature: _____  Date: 9/12/05

Print Name: W Carl Meave, Jr.

Title: Secretary

7

BH01\549787.9
IDAB/C

## Exhibit A

### Officer's Certificate

#### of

#### Amcast Automotive of Indiana, Inc.

I, W. Carl More Jr, certify:

Capitalized terms used in this Certificate have the same meaning as defined in the Accounts Receivable Purchase Agreement dated the same date as this Certificate (the "Sale Agreement") by and between Amcast Automotive of Indiana, Inc., an Indiana corporation ("Supplier") and HCSPay, LLC, a Delaware limited liability company ("HCSPay"). In addition, as used in this Certificate, the following terms have the meanings set forth below:

"Administrative Agent" shall mean AGM II, LLC, a Delaware limited liability company, as Administrative Agent under the Loan Agreement and the Security Agreement.

"Effective Date" shall mean the date of the Sale Agreement.

"Lenders" shall have the meaning ascribed to such term in the Loan Agreement.

"Loan Agreement" shall mean the Master Loan Agreement dated as of August 16, 2005 between SurGen, the Lenders and the Administrative Agent.

"Operative Documents" shall mean (i) the Sale Agreement, (ii) the SurGen Sale Agreement, (iii) the Security Agreement, (iv) the Loan Agreement and (v) the Services Agreement, dated as of August 16, 2005, between the Servicer and SurGen.

"Security Agreement" shall mean the Security Agreement, dated as of August 16, 2005 by SurGen in favor of the Administrative Agent, for the benefit of the Lenders.

"Servicer" shall mean HCS Payment Services, Inc., a Michigan corporation.

"SurGen" shall mean SurGen, LLC, a Delaware limited liability company.

"SurGen Sale Agreement" shall mean the Accounts Receivable Sale Agreement, dated as of August 16, 2005, between SurGen, as purchaser, and HCSPay, as seller.

"Transaction" shall mean the transaction contemplated by the Operative Documents.

I am the duly elected and acting Secretary of Supplier.

This Certificate is being delivered to and may be relied upon by Dykema Gossett PLLC ("Dykema") in connection with the opinion of counsel with respect to a true sale of the Purchased Receivables (the "Opinion") to be rendered by Dykema in connection with the Transaction. I understand that Dykema will rely upon the facts, opinions, and beliefs set forth in this Certificate and that the Opinion is premised upon the truth and accuracy of the facts, opinions, and beliefs set forth in this Certificate.

1

I am familiar with the business and books and records of Supplier, Supplier's relations with its creditors, and the transactions and other factual matters described in this Certificate. I have made such investigations and inquiries (including, without limitation, of personnel and employees having familiarity with such transactions and factual matters) as may be necessary to enable me to attest to the matters set forth in this Certificate and to execute and deliver this Certificate.

I have carefully reviewed Schedule 1 attached hereto in its entirety and the statements contained in this Certificate. I have had the opportunity to ask questions about Schedule 1 attached hereto and matters set forth in this Certificate. I certify that (1) each factual statement contained in Schedule 1 attached hereto and in this Certificate relating to Supplier is, to the best of my knowledge (based on the investigations and inquiries described above), true and correct and does not fail to state a material fact the omission of which makes the statement as it appears incomplete or misleading and (2) with respect to each statement in Schedule 1 attached hereto and in this Certificate relating to Supplier that describes an anticipated future event or method of operation, (a) such statement is consistent with the proposed method of operation of Supplier, and (b) I have no reason to believe that such event or method of operation will not occur as described.

Amcast Automotive of Indiana, Inc.

By: _W Carl Meone Jr_

Name: _W Carl Meone Jr_

Title:   Secretary

BH01\549787.9
IDA\JC

## SCHEDULE 1 TO OFFICER'S CERTIFICATE

1.     Terms of the Sale Agreement. Section 4 of the Sale Agreement provides that Supplier will sell to HCSPay, and HCSPay will purchase from Supplier, all of Supplier's right, title and interest in, under and to the Purchased Receivables. In addition, Section 1 of the Sale Agreement provides that each of the parties thereto intends that each transfer thereunder "constitutes an absolute and irrevocable sale of the Purchased Receivables to HCSPay and provides HCSPay with the full benefits of ownership of the Purchased Receivables," which reflects the intention of Supplier that each transfer be an absolute transfer in the form of a sale, although Sections 9 and 18 of the Sale Agreement impose on Supplier an obligation to repurchase Purchased Receivables it has conveyed in certain circumstances (such as defective or rejected or returned goods or services, discounts or adjustments by Supplier and setoffs as described in paragraph 12 below) and upon breaches of certain representations or warranties under the Sale Agreement, as described in paragraph 11 below.

2.     Relinquishment of Title and Control. Supplier relinquishes all title and control over the Purchased Receivables upon the transfer of each such Purchased Receivable under the Sale Agreement.

3.     No Prior Obligation Due from Supplier to HCSPay. Supplier was not indebted to HCSPay before the closing of the Transaction. Except as described in paragraphs 11 and 12 below, Supplier is not indebted to HCSPay at the time of or as a result of the Transaction.

4.     No Right to Surplus. Supplier has no right to receive any proceeds allocable to the Purchased Receivables, even if HCSPay receives more than the purchase price payable to Supplier from cash collections and other cash proceeds in respect of, or recoveries on, the Purchased Receivables sold by the Supplier (collectively, with respect to such Purchased Receivables, "Collections"). Accordingly, HCSPay (or its assigns) do not have any obligation to account to Supplier for or return any of the Purchased Receivables or proceeds thereof.

5.     Economics of the Transaction. The economics of the Transaction reflect the intent of Supplier that the transfer of the Purchased Receivables constitute a sale of the Purchased Receivables by Supplier to HCSPay rather than a loan to Supplier secured by the Purchased Receivables, because the purchase price that HCSPay pays to Supplier for the Purchased Receivables reflects the market price determined by Supplier and HCSPay under the Sale Agreement and reflects the terms of an arm's length transfer to a third party. The terms of the Sale Agreement could reasonably be expected to have been different if HCSPay were granted only a security interest in respect of secured loans made by HCSPay to Supplier.

6.     No Recourse for Defaults. Supplier has not guaranteed to HCSPay (nor to any assignee of HCSPay) the payment of any Purchased Receivable. Supplier is not obligated to repurchase from HCSPay any Purchased Receivable in default, unless Supplier breached its representations or warranties with respect to the Purchased Receivable under the Sale Agreement. If losses on the Purchased Receivables exceed the risk of loss factor reflected in the applicable discount rate (the "Discount Rate") used to establish the purchase price at the time the Purchased Receivables were first transferred, the losses will be borne by HCSPay and its assignees and are not guaranteed as to payment by Supplier.

7.     Payment Risk. The amount and timing of distributions made on the Purchased Receivables cannot be directly controlled by Supplier.

8.     Yield Considerations. Supplier does not guarantee or otherwise pay to HCSPay (or any assignee of HCSPay) a specified yield if the collection time or amount differs from that anticipated at the time a particular Purchased Receivable is transferred.

9.     No Post-Sale Adjustment. No provision exists in the Sale Agreement (except with respect to Purchased Receivables that are subject to a reduction or cancellation of the outstanding principal balance thereof by reason of Dilution (as defined in paragraph 12 below) and Purchased Receivables with respect to which a representation or warranty by Supplier has been violated) for any modification after the date on which a given Purchased Receivable is transferred of the amount of the consideration HCSPay delivers to Supplier in exchange for

BH01\549787.9
IDABJC

the Purchased Receivable. No such modifications will be made. Changes, if any, to the Discount Rate will be effective only on a prospective basis and will not affect the consideration already paid for Purchased Receivables.

10. No Put or Call Feature. None of HCSPay, SurGen or Lenders may require Supplier to repurchase the Purchased Receivables, other than in connection with Dilution (as defined in paragraph 12 below) or the breach by Supplier of representations and warranties as described in paragraph 11 below. Supplier may not require HCSPay to reconvey the Purchased Receivables to Supplier or any assignee.

11. Breach of Representations or Warranties. In Section 10 of the Sale Agreement, Supplier makes representations and warranties with respect to the Purchased Receivables it has sold to HCSPay. Such representations and warranties include, among other things, information relating to the characteristics of the Purchased Receivables, that the Purchased Receivables comply with law, that the Purchased Receivables are not subject to liens, and other similar representations and warranties.

If there is a breach of any representation or warranty with respect to any Purchased Receivable, Supplier must within one Business Day of demand by HCSPay repurchase such Purchased Receivable from HCSPay at a repurchase price equal to the outstanding principal balance of such Purchased Receivable. The obligation to make payments with respect to breaches of representations and warranties by Supplier arises only if any such representation or warranty with respect to any Purchased Receivable was untrue as of the Purchase Date of such Purchased Receivable, and not as a result of any subsequent decline in value of the Purchased Receivable.

12. Dilution. As used herein, "Dilution" refers to reductions in the outstanding principal balances of Purchased Receivables attributable to factors such as defective or rejected or returned goods or services, any discount to Buyers, other credit adjustments in amounts owed by Buyers, or reductions or cancellations in respect of exercises of setoffs by any Person, and similar items that result in reductions to the outstanding principal balance of the Purchased Receivables. Supplier is responsible to HCSPay for Dilution to Purchased Receivables it has sold to HCSPay.

13. Best Interest of Supplier. The management of Supplier has determined that the sale of the Purchased Receivables to HCSPay is in Supplier's best interests and represents a practicable course of action without impairing the rights and interests of Supplier's creditors.

14. Internal Financial Books and Records. At the Effective Date and at all times thereafter, Supplier will report on its internal financial books and records the transfer of the Purchased Receivables as a sale to HCSPay. The computer records storing essential information on the Purchased Receivables and similar assets of Supplier will reflect clearly Supplier's absolute transfer of the Purchased Receivables to HCSPay.

15. Additional Notice of Sale. Pursuant to the terms of the Sale Agreement, Supplier has authorized HCSPay to file U.C.C.-1 financing statements satisfying the requirements of the applicable Uniform Commercial Code which will reflect that Supplier has sold the Purchased Receivables to HCSPay.

16. Secured Creditor Notification. Supplier's secured creditors which have a security interest in accounts receivable of Supplier which may become Purchased Receivables have access to Supplier's computer records relating to such accounts receivable. Supplier has notified all of its secured creditors which have a security interest in accounts receivable of Supplier which may become Purchased Receivables that (a) Supplier will sell certain accounts receivable to HCSPay, and (b) Supplier will not claim any ownership interest in such sold accounts receivable. Each such secured creditor has executed and delivered to HCSPay a lender consent in the form attached to this Certificate as Exhibit A.

17. Notice to Potential Purchasers. In addition, at all times, if a third party, including a potential purchaser of the Purchased Receivables, inquires, Supplier will promptly reply that Supplier has sold the Purchased Receivables to HCSPay, and Supplier will not claim any ownership interest in the Purchased Receivables.

BH01\549787.9
DABJC

18.     Notification to Buyers. The Buyers will be notified of Supplier's transfer of the Purchased Receivables to HCSPay.

19.     No Intent to Evade Public Policy, etc. Supplier has valid business reasons for the transfer of the Purchased Receivables. The transfer is not made with any intent to hinder, delay or defraud any entity to which Supplier is or will become indebted on or after the date of transfer. Supplier is not insolvent, and the transfer of the Purchased Receivables will not render Supplier insolvent; Supplier is not engaged in business or about to engage in business for which the assets remaining with it after the transfer of the Purchased Receivables will be an unreasonably small amount of capital; and Supplier does not intend or believe that it will incur debts beyond its ability to pay as they mature. The transfer of the Purchased Receivables is not made with any intent to evade any applicable laws or public policy.

20.     Collections/Deposits to Accounts. In accordance with the requirements of the Sale Agreement, all Buyers will be directed to remit Collections to HCSPay or such other assignee of HCSPay as HCSPay may direct either by wire transfer to an account in the name of HCSPay (or such other assignee of HCSPay) or by mail.

21.     Independent Servicer. The Servicer is unaffiliated with the Supplier.

22.     Accounting Treatment. Supplier (a) does not prepare nor maintain consolidated financial statements with HCSPay, and (b) is not required to consolidate its financial statements with HCSPay or any of its affiliates under United States generally accepted accounting principles. Supplier maintains separate financial statements which will disclose the effects of the subject transactions in accordance with generally accepted accounting principles and, in particular, will clearly reflect its respective separate assets and liabilities and the fact that the Purchased Receivables are not its assets.

23.     No Other Agreements. There is not and will not be any other agreement between Supplier and HCSPay that supplements or otherwise modifies the Sale Agreement (other than any extension of the term and other amendments or waivers not relating to the matters discussed herein).

## SELL ORDER

HCSPay, LLC
26321 Woodward Avenue
Huntington Woods, MI 48070

Re: HCS EarlyPay℠ Program – General Motors Corporation and Daimler-Chrysler Corporation ("Buyer")

Ladies and Gentlemen:

This Sell Order is incorporated into and forms a part of a certain Accounts Receivable Purchase Agreement dated August 30, 2005 ("Agreement") between HCSPay, LLC ("HCSPay") and Amcast Automotive of Indiana, Inc. dba Amcast Automotive, Gas City and Amcast Automotive, Fremont ("Supplier"). Unless otherwise defined in this letter, capitalized terms used in this letter shall have the meaning ascribed to them in the Agreement.

**X** Supplier hereby elects to participate in the HCSPay All-the-Time Program, meaning Supplier has elected to receive early payment on all Available Receivables that are considered eligible by HCSPay as they become available and up to a limit of $5,500,000 for General Motors Corporation and $2,500,000 for Daimler-Chrysler Corporation.

**N/A** Supplier hereby elects to participate in the HCSPay Any-Time-Program, meaning Supplier has elected to control its receipt of early payment by accessing the HCS Website to selectively identify certain Available Receivables and submit an electronic request, Offered Receivables, to HCSPay for early payment.

Supplier acknowledges its agreement to discount receivables sold to HCSPay based upon an opening annualized rate of Libor + 5.00%. On the purchase date, HCSPay shall calculate the number of discount days as the day of purchase through the web posted Buyer payment date plus one business day. Supplier further agrees that the annualized rate will change periodically without notice based on a 0.25% or more change in the 30 day Libor rate as posted in the Wall Street Journal. HCSPay agrees to provide Supplier with at least 30 day notice of any changes in the annualized rate based on factors other than changes in Libor.

Supplier acknowledges that HCSPay may reduce the amount paid for a Purchased Receivables by the following fees and liabilities that may be owed by the Supplier:

1.  HCSPay may charge an extra processing fee for the movement of funds by a means other than by ACH transfer (e.g. paper checks, wire transfer, etc.).

2.  Requests for hard copies of any transaction information that is available on the Platform or has been previously e-mailed to the requesting party are subject to additional copying and processing fees.

3.  Participants in the Any-Time Program that identify Offered Receivables by a means other than a "point and click" election on the Platform are subject to additional processing fee.

Amcast Automotive of Indiana, Inc.

dba Amcast Automotive, Gas City and Amcast Automotive, Fremont

Signature: _____  Date: _9/12/05_

Print Name: _Patrick Daugherty_

Title: _President_

Exhibit B

Aging Contracts By Date



## HCS
## Payment Services

You are logged on as Shelly Bays (sbays@hcspay.com)
System time : 03/23/06 10:06:08 AM EST Processing date : 03/23/2006

Report Date : 03/23/2006

### Aging Contracts By Date

for : Amcast Industrial Corporation

| Contract Key | Face Amount | Invoice Number | Pack | 5+ Days Overdue | Expected Payment Date | Cor |
|---|---|---|---|---|---|---|
| General Motors Corporation | | | | | | |
| Amcast Industrial Corporation | | | | | | |
| 2462746 2 | $250.00 | G1I2QSU1EL5Z | 8780 | $250.00 | 11/03/2005 | litigati |
| 2462747 2 | $5,000.00 | G1I2QTU1BEII | 8780 | $5,000.00 | 11/03/2005 | litigati |
| 2462748 2 | $2,000.00 | G1I2RBU1BLNN | 8780 | $2,000.00 | 11/03/2005 | litigati |
| 2462749 1 | $2,000.00 | G1I37DU1BLNN | 8853 | $2,000.00 | 11/03/2005 | pymt |
| 2474223 1 | $434.88 | GADHED4ABHPU | 091605 | $434.88 | 11/03/2005 | pymt |
| 2486946 1 | $6,000.00 | G1I5PNU1BEII | 8934 | $6,000.00 | 11/03/2005 | pymt |
| 2486947 1 | $2,750.00 | G1I5XRU1BL5Z | 8948 | $2,750.00 | 11/03/2005 | pymt |
| 2486948 1 | $1,250.00 | G1I5XSU1ELNN | 8948 | $1,250.00 | 11/03/2005 | pymt |
| 2486949 1 | $1,304.65 | GADHG34ABHPU | 8949 | $1,304.65 | 11/03/2005 | pymt |
| 2489747 1 | $9,319.27 | 000879712 | 35674 | $9,319.27 | 12/05/2005 | litigati |
| 2489754 1 | $60,176.51 | 001507637 | 9045 | $60,176.51 | 12/05/2005 | litigati |
| 2489756 1 | $-1,541.07 | ESD0004232 | 0004232 | $-1,541.07 | 12/05/2005 | litigati |
| 2489757 1 | $-1,541.07 | ESD0004235 | 0004235 | $-1,541.07 | 12/05/2005 | litigati |
| 2490212 1 | $57,733.63 | 000288843 | 35689 | $57,733.63 | 12/05/2005 | litigati |
| 2490213 1 | $14,088.64 | 000335749 | 9054 | $14,088.64 | 12/05/2005 | litigati |
| 2490214 1 | $40,267.53 | 000879992 | 35679 | $40,267.53 | 12/05/2005 | litigati |
| 2490218 1 | $15,173.37 | 001059515 | 35685 | $15,173.37 | 12/05/2005 | litigati |
| 2490220 1 | $60,507.54 | 001059516 | 35680 | $60,507.54 | 12/05/2005 | litigati |
| 2490231 1 | $11,363.54 | 001573908 | 9028 | $11,363.54 | 12/05/2005 | litigati |
| 2490233 1 | $9,827.19 | 001977319 | 35686 | $9,827.19 | 12/05/2005 | litigati |
| 2490234 1 | $1,509.07 | 002314856 | 9049 | $1,509.07 | 12/05/2005 | litigati |
| 2490235 1 | $-2,840.89 | ADA2005100571564 | 9028 | $-2,840.89 | 12/05/2005 | litigati |
| 2490236 1 | $-38.53 | ESD0004248 | 0004248 | $-38.53 | 12/05/2005 | litigati |
| 2490556 1 | $6,037.99 | 000337072 | 9068 | $6,037.99 | 12/05/2005 | litigati |
| 2490557 1 | $38,026.80 | 000880247 | 35694 | $38,026.80 | 12/05/2005 | litigati |
| 2490569 1 | $40,037.21 | 001060041 | 9066 | $40,037.21 | 12/05/2005 | litigati |
| 2490570 1 | $11,319.61 | 001060043 | 35699 | $11,319.61 | 12/05/2005 | litigati |
| 2490571 1 | $53,683.27 | 001060044 | 35693 | $53,683.27 | 12/05/2005 | litigati |
| 2490580 1 | $36,882.37 | 001909097 | 9074 | $36,882.37 | 12/05/2005 | litigati |
| 2490581 1 | $11,647.07 | 001909098 | 9075 | $11,647.07 | 12/05/2005 | litigati |
| 2490582 1 | $46,680.20 | 001977430 | 35698 | $46,680.20 | 12/05/2005 | litigati |
| 2490583 1 | $3,018.15 | 002315390 | 9058 | $3,018.15 | 12/05/2005 | litigati |
| 2490584 1 | $750.00 | GADHKZ4ABHJX | C35551 | $750.00 | 12/05/2005 | litigati |

Aging Contracts By Date

| | | | | | |
|---|---|---|---|---|---|
| 2490612 1 | $-129.25 | SCD5C0197329 | RM | $-129.25 12/05/2005 | litigati |
| 2490613 1 | $-129.25 | SCD5C0197330 | RM | $-129.25 12/05/2005 | litigati |
| 2491111 1 | $41,659.81 | 000289481 | 35704 | $41,659.81 12/05/2005 | litigati |
| 2491112 1 | $22,114.31 | 000289513 | 9083 | $22,114.31 12/05/2005 | litigati |
| 2491113 | $12,408.00 | 000289598 | 9089 | $12,408.00 12/05/2005 | |
| 2491114 | $9,816.76 | 000289918 | 35718 | $9,816.76 12/05/2005 | |
| 2491115 | $3,018.15 | 000290445 | 9105 | $3,018.15 12/05/2005 | |
| 2491116 | $31,138.02 | 000290445 | 35730 | $31,138.02 12/05/2005 | |
| 2491117 | $18,113.97 | 000337432 | 9078 | $18,113.97 12/05/2005 | |
| 2491118 | $40,287.53 | 000880495 | 35703 | $40,267.58 12/05/2005 | |
| 2491119 | $14,050.30 | 000880680 | 9059 | $14,050.30 12/05/2005 | |
| 2491120 | $34,032.83 | 000880731 | 35708 | $34,032.83 12/05/2005 | |
| 2491122 | $3,512.58 | 000880782 | 9073 | $3,512.58 12/05/2005 | |
| 2491129 | $15,195.85 | 001060587 | 35702 | $15,195.85 12/05/2005 | |
| 2491130 | $57,297.17 | 001060588 | 35705 | $57,297.17 12/05/2005 | |
| 2491131 | $59,929.50 | 001061107 | 35709 | $59,929.50 12/05/2005 | |
| 2491133 | $14,147.09 | 001061108 | 35711 | $14,147.09 12/05/2005 | |
| 2491148 | $9,827.19 | 001137120 | 35677 | $9,827.19 12/05/2005 | |
| 2491149 | $12,011.01 | 001137621 | 35690 | $12,011.01 12/05/2005 | |
| 2491150 | $10,919.10 | 001138094 | 35701 | $10,919.10 12/05/2005 | |
| 2491162 1 | $73,764.75 | 001910430 | 9097 | $73,764.75 12/05/2005 | Invoic |
| 2491163 | $28,399.67 | 001978926 | 35714 | $28,399.67 12/05/2005 | |
| 2491164 | $49,047.06 | 001980445 | 35731 | $49,047.06 12/05/2005 | |
| 2491170 | $3,169.06 | 002315869 | 9070 | $3,169.06 12/05/2005 | |
| 2491171 | $1,584.53 | 002315289 | 9081 | $1,584.53 12/05/2005 | |
| 2491172 | $1,317.53 | 6637608106R05279 | 000035671 | $1,317.53 12/05/2005 | |
| 2491174 | $-1,031.43 | ESD0004281 | RMA 2425 | $-1,031.43 12/05/2005 | |
| 2491175 | $-5,138.68 | ESD00042B3 | RMA 5179 | $-5,138.68 12/05/2005 | |
| 2491176 | $-8,106.82 | ESD0019778 | RMA# 5176 | $-8,106.82 12/05/2005 | |
| 2491177 | $-50,412.78 | ESD00242D9 | MARLETTE | $-50,412.78 12/05/2005 | |
| 2491199 | $2,330.35 | SCCBC0456085 | DEFAULT | $2,330.35 12/05/2005 | |
| 2491200 | $6,074.16 | SCCSC0456056 | DEFAULT | $6,074.16 12/05/2005 | |
| 2491223 | $-81.83 | SCD3C0197422 | RM | $-81.83 12/05/2005 | |
| 2491224 | $-768.05 | SCD5C0197423 | RM | $-768.05 12/05/2005 | |
| 2491225 | $-1,209.84 | SCD5C0197424 | RM | $-1,209.84 12/05/2005 | |
| 2491226 | $-401.11 | SCD5C0197425 | RM | $-401.11 12/05/2005 | |
| 2491227 | $-360.64 | SCD5C0197426 | RM | $-360.64 12/05/2005 | |
| 2491228 | $-27,661.06 | SCD5C0197427 | RM | $-27,661.06 12/05/2005 | |
| 2491229 | $-6,781.41 | SCD5C0197428 | RM | $-6,781.41 12/05/2005 | |
| 2491230 | $-12,422.35 | SCD5C0197429 | RM | $-12,422.35 12/05/2005 | |
| 2491231 | $-736.49 | SCD5C0197430 | RM | $-736.49 12/05/2005 | |
| 2496413 | $3,512.58 | 000881409 | 9098 | $3,512.58 12/05/2005 | |
| 2496414 | $70,976.95 | 001061633 | 35723 | $70,976.95 12/05/2005 | |
| 2496415 | $3,793.34 | 001061636 | 35727 | $3,793.34 12/05/2005 | |
| 2496419 | $4,061.08 | 0017604722R05283 | 000009062 | $4,061.08 12/05/2005 | |
| 2496420 | $3,018.15 | 002316864 | 9094 | $3,018.15 12/05/2005 | |
| 2496423 | $736.49 | SCCSC0197529 | KHT/RM | $736.49 12/05/2005 | |
| 2496424 | $12,422.35 | SCCSC0197530 | KHT/RM | $12,422.35 12/05/2005 | |
| 2496425 | $6,781.41 | SCCSC0197531 | KHT/RM | $6,781.41 12/05/2005 | |
| 2496426 | $27,661.06 | SCCSC0197532 | KHT/RM | $27,661.06 12/05/2005 | |
| 2496427 | $350.64 | SCCSC0197533 | KHT/RM | $350.64 12/05/2005 | |

| ------ --- | ------- | ----------- --- | --------- | ------- ------ ------ | | |
|---|---|---|---|---|---|
| 2496428 | $401.11 | SCCSC0197534 | KHT/RM | $401.11 12/05/2005 | |
| 2496429 | $1,209.84 | SCCSC0197535 | KHT/RM | $1,209.84 12/05/2005 | |
| 2496430 | $768.05 | SCCSC0197536 | KHT/RM | $768.05 12/05/2005 | |
| 2496431 | $81.83 | SCCSC0197537 | KHT/RM | $81.83 12/05/2005 | |
| 2496432 | $158.61 | SCCSC0197539 | KHT/RM | $158.61 12/05/2005 | |
| 2496786 | $6,164.27 | 000288642A287 | 9061 | $6,164.27 12/05/2005 | |
| 2496787 | $14,351.66 | 000290872 | 9117 | $14,351.66 12/05/2005 | |
| 2496788 | $31,016.43 | 000290874 | 35736 | $31,016.43 12/05/2005 | |
| 2496789 | $48,012.77 | 000291734 | 35759 | $48,012.77 12/05/2005 | |
| 2496790 | $17,237.83 | 000291735 | 9144 | $17,237.83 12/05/2005 | |
| 2496791 | $6,037.99 | 000338771 | 9124 | $6,037.99 12/05/2005 | |
| 2496792 | $16,101.30 | 000339346 | 5902 | $16,101.30 12/05/2005 | |
| 2496793 | $16,101.30 | 000339695 | 9147 | $16,101.30 12/05/2005 | |
| 2496794 | $25,135.49 | 000881511 | 35735 | $25,135.49 12/05/2005 | |
| 2496795 | $1,972.53 | 000881511A286 | 35735 | $1,972.53 12/05/2005 | |
| 2496796 | $34,389.19 | 000881719 | 35745 | $34,389.19 12/05/2005 | |
| 2496797 | $5,268.86 | 000881721 | 9129 | $5,268.86 12/05/2005 | |
| 2496798 | $5,268.86 | 000881722 | 9115 | $5,268.86 12/05/2005 | |
| 2496799 | $38,805.07 | 000881863 | 35758 | $38,805.07 12/05/2005 | |
| 2496800 | $7,025.15 | 000881864 | 9136 | $7,025.15 12/05/2005 | |
| 2496808 | $12,319.14 | 001061645 | 9118 | $12,319.14 12/05/2005 | |
| 2496809 | $70,324.11 | 001062148 | 35738 | $70,324.11 12/05/2005 | |
| 2496810 | $4,414.43 | 001062149 | 35740 | $4,414.43 12/05/2005 | |
| 2496811 | $65,385.14 | 001062676 | 35748 | $65,385.14 12/05/2005 | |
| 2496812 | $10,274.28 | 001062678 | 35753 | $10,274.28 12/05/2005 | |
| 2496813 | $57,080.40 | 001063203 | 35760 | $57,080.40 12/05/2005 | |
| 2496814 | $10,274.28 | 001063204 | 38765 | $10,274.28 12/05/2005 | |
| 2496815 | $15,398.93 | 001063209 | 9155 | $15,398.93 12/05/2005 | |
| 2496819 | $7,643.37 | 001138633 | 35705 | $7,643.37 12/05/2005 | |
| 2496820 | $7,643.37 | 001139286 | 35721 | $7,643.37 12/05/2005 | |
| 2496821 | $4,357.64 | 001139698 | 35733 | $4,357.64 12/05/2005 | |
| 2496827 | $6,232.03 | 0D17613B9DR05284 | 000035725 | $6,232.03 12/05/2005 | |
| 2496828 1 | $81,529.46 | 001911757 | 9126 | $81,529.46 12/05/2005 | Invoic |
| 2496829 1 | $81,529.46 | 001912413 | 9137 | $81,529.46 12/05/2005 | Invoic |
| 2496830 | $26,205.85 | 001982168 | 35751 | $26,205.85 12/05/2005 | |
| 2496831 | $4,753.58 | 002317406 | 9112 | $4,753.58 12/05/2005 | |
| 2496832 | $1,865.38 | 6167604709R05284 | 000009063 | $1,865.38 12/05/2005 | |
| 2496834 | $2,300.80 | ESC0004319 | 0004319 | $2,300.80 12/05/2005 | |
| 2496835 | $-646.96 | ESD0004297 | 0004297 | $-646.96 12/05/2005 | |
| 2496836 | $-2,300.80 | ESD0004304 | 0004304 | $-2,300.80 12/05/2005 | |
| 2496837 | $-2,300.80 | ESD0004315 | 0004315 | $-2,300.80 12/05/2005 | |
| 2496838 | $-113.06 | ESD0019802 | RMA#2428 | $-113.06 12/05/2005 | |
| 2496839 | $-6,344.36 | ESD0024243 | MARLETTE | $-6,344.36 12/05/2005 | |
| 2496840 | $1,200.00 | G19NPU1EA2O | 5749 | $1,200.00 12/05/2005 | |
| 2496908 | $-76.69 | SCDSC1069283 | DEFAULT | $-76.69 12/05/2005 | |
| 2501730 | $30,494.38 | 000292565 | 35777 | $30,494.38 12/05/2005 | |
| 2501731 | $14,049.85 | 000292566 | 9165 | $14,049.85 12/05/2005 | |
| 2501732 | $23,738.60 | 000882173 | 35769 | $23,738.60 12/05/2005 | |
| 2501733 | $8,781.44 | 000882174 | 9161 | $8,781.44 12/05/2005 | |
| 2501736 1 | $71,829.34 | 001063228 | 35770 | $71,829.34 12/05/2005 | Invoic |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2501737 | $2,857.61 | 001063755 | 35775 | $2,857.61 | 12/05/2005 | |
| 2501738 | $9,239.36 | 001063756 | 9166 | $9,239.36 | 12/05/2005 | |
| 2501739 | $12,011.01 | 001140569 | 35755 | $12,011.01 | 12/05/2005 | |
| 2501740 | $17,470.56 | 001141001 | 35768 | $17,470.56 | 12/05/2005 | |
| 2501744 1 | $81,529.46 | 001913620 | 9160 | $81,529.46 | 12/05/2005 | Invoic |
| 2501745 | $45,807.01 | 001983475 | 35773 | $45,807.01 | 12/05/2005 | |
| 2501746 | $45,996.81 | 001984270 | 35785 | $45,996.81 | 12/05/2005 | |
| 2501747 | $4,678.13 | 002317913 | 9130 | $4,678.13 | 12/05/2005 | |
| 2501748 | $1,584.53 | 002318458 | 9139 | $1,584.53 | 12/05/2005 | |
| 2501749 | $19,881.45 | ACA2005101771293 | 35751 | $19,881.45 | 12/05/2005 | |
| 2501754 | $-172.83 | SCDSC0198285 | RM | $-172.83 | 12/05/2005 | |
| 2501755 | $-114.94 | SCDSC0198296 | RM | $-114.94 | 12/05/2005 | |
| 2501756 | $-129.25 | SCDSC0198287 | RM | $-129.25 | 12/05/2005 | |
| 2501762 | $-76.69 | SCDSC1071565 | DEFAULT | $-76.69 | 12/05/2005 | |
| 2503203 | $9,423.45 | 000293000 | 9178 | $9,423.45 | 12/05/2005 | |
| 2503204 | $53,713.27 | 000293011 | 35794 | $53,713.27 | 12/05/2005 | |
| 2503205 | $11,835.98 | 000340899 | 9186 | $11,835.98 | 12/05/2005 | |
| 2503207 | $21,650.23 | 000882388 | 35780 | $21,650.23 | 12/05/2005 | |
| 2503208 | $5,268.86 | 000882389 | 9158 | $5,268.86 | 12/05/2005 | |
| 2503209 | $25,207.84 | 000882721 | 35795 | $25,207.84 | 12/05/2005 | |
| 2503210 | $3,512.58 | 000882722 | 9175 | $3,512.58 | 12/05/2005 | |
| 2503225 | $69,829.31 | 001064309 | 35782 | $69,829.31 | 12/05/2005 | |
| 2503226 | $9,199.80 | 001064310 | 35787 | $9,199.80 | 12/05/2005 | |
| 2503227 1 | $74,011.77 | 001064828 | 35797 | $74,011.77 | 12/05/2005 | Invoic |
| 2503228 | $3,509.47 | 001064830 | 35791 | $3,509.47 | 12/05/2005 | |
| 2503231 | $5,459.55 | 001141521 | 35778 | $5,459.55 | 12/05/2005 | |
| 2503236 | $45,812.89 | 001986859 | 35796 | $45,812.89 | 12/05/2005 | |
| 2503237 | $45,812.89 | 001986536 | 35803 | $45,812.89 | 12/05/2005 | |
| 2503238 | $1,584.53 | 002318540 | 9162 | $1,584.53 | 12/05/2005 | |
| 2503239 | $3,018.15 | 002320122 | 9179 | $3,018.15 | 12/05/2005 | |
| 2503733 | $31,504.16 | 000293968 | 9210 | $31,504.16 | 12/05/2005 | |
| 2503734 | $29,497.61 | 000293969 | 35808 | $29,497.61 | 12/05/2005 | |
| 2503735 | $28,379.26 | 000293970 | 35812 | $28,379.26 | 12/05/2005 | |
| 2503736 | $19,726.63 | 000341368 | 9200 | $19,726.63 | 12/05/2005 | |
| 2503737 | $23,671.96 | 000341889 | 9213 | $23,671.96 | 12/05/2005 | |
| 2503738 | $23,016.68 | 000882980 | 35799 | $23,016.68 | 12/05/2005 | |
| 2503739 | $2,013.59 | 001065339 | 35806 | $2,013.59 | 12/05/2005 | |
| 2503740 1 | $71,493.41 | 001065865 | 35810 | $71,493.41 | 12/05/2005 | Invoic |
| 2503741 | $5,876.71 | 001065866 | 35814 | $5,876.71 | 12/05/2005 | |
| 2503742 | $6,479.46 | 001141992 | 35789 | $6,479.46 | 12/05/2005 | |
| 2503743 | $8,616.18 | 0017625057R05293 | 000035783 | $8,616.18 | 12/05/2005 | |
| 2503744 1 | $81,529.46 | 001915618 | 9202 | $81,529.46 | 12/05/2005 | Invoic |
| 2503745 | $2,840.89 | 001961667 | 9152 | $2,840.89 | 12/05/2005 | |
| 2503746 | $45,135.75 | 001987282 | 35819 | $45,135.75 | 12/05/2005 | |
| 2503747 | $45,135.75 | 001988092 | 35828 | $45,135.75 | 12/05/2005 | |
| 2503748 | $7,922.64 | 002320783 | 9195 | $7,922.64 | 12/05/2005 | |
| 2503749 | $4,678.13 | 002321377 | 9209 | $4,678.13 | 12/05/2005 | |
| 2503750 | $-28,358.12 | ESD0024340 | MARLETTE | $-28,358.12 | 12/05/2005 | |
| 2503751 | $-1,309.32 | SCDSC0198616 | RM | $-1,309.32 | 12/05/2005 | |
| 2503752 | $-2,696.32 | SCDSC0198617 | RM | $-2,696.32 | 12/05/2005 | |
| 2503753 | $-7,356.11 | SCDSC0198618 | RM | $-7,356.11 | 12/05/2005 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2503754 | $-13,830.53 | SCDSC0198519 | RM | $-13,830.53 | 12/05/2005 | |
| 2503755 | $-175.33 | SCDSC0198520 | RM | $-175.33 | 12/05/2005 | |
| 2503756 | $-1,103.05 | SCDSC0198521 | RM | $-1,103.05 | 12/05/2005 | |
| 2503757 | $-1,037.00 | SCDSC0198522 | RM | $-1,037.00 | 12/05/2005 | |
| 2503758 | $-576.04 | SCDSC0198523 | RM | $-576.04 | 12/05/2005 | |
| 2503759 | $-81.83 | SCDSC0198524 | RM | $-81.83 | 12/05/2005 | |
| 2503760 | $-192.60 | SCDSC0198525 | RM | $-192.60 | 12/05/2005 | |
| 2503761 | $-153.39 | SCDSC1073361 | AMCAST | $-153.39 | 12/05/2005 | |
| 2503762 | $1,250.00 | G1JAW8U1ELSZ | 9205 | $1,250.00 | 12/05/2005 | |
| 2504827 | $32,394.72 | 000294757 | 35833 | $32,394.72 | 12/05/2005 | |
| 2504828 | $11,007.97 | 000294759 | 9228 | $11,007.97 | 12/05/2005 | |
| 2504829 | $27,043.42 | 000295204 | 35849 | $27,043.42 | 12/05/2005 | |
| 2504830 | $18,944.47 | 000295578 | 9240 | $18,944.47 | 12/05/2005 | |
| 2504831 | $24,324.40 | 000295579 | 35855 | $24,324.40 | 12/05/2005 | |
| 2504836 | $15,542.83 | 000883591 | 35839 | $15,542.83 | 12/05/2005 | |
| 2504837 | $7,025.15 | 000883592 | 9204 | $7,025.15 | 12/05/2005 | |
| 2504857 | $70,467.12 | 001066374 | 35826 | $70,467.12 | 12/05/2005 | |
| 2504858 | $71,385.53 | 001066902 | 35801 | $71,385.53 | 12/05/2005 | |
| 2504859 | $3,509.47 | 001066903 | 35827 | $3,509.47 | 12/05/2005 | |
| 2504860 | $70,527.54 | 001066904 | 35840 | $70,527.54 | 12/05/2005 | |
| 2504861 | $70,925.66 | 001067386 | 35850 | $70,925.66 | 12/05/2005 | |
| 2504862 | $2,991.76 | 001067387 | 35847 | $2,991.76 | 12/05/2005 | |
| 2504863 | $49,276.56 | 001067389 | 9241 | $49,276.56 | 12/05/2005 | |
| 2504868 | $6,639.28 | 001144017 | 35887 | $6,639.28 | 12/05/2005 | |
| 2504872 | $11,363.54 | 001583876 | 9187 | $11,363.54 | 12/05/2005 | |
| 2504873 | $2,840.89 | 001583877 | 9085 | $2,840.89 | 12/05/2005 | |
| 2504874 | $2,840.89 | 001583977 | 9230 | $2,840.89 | 12/05/2005 | |
| 2504875 1 | $81,529.46 | 001916698 | 9214 | $81,529.46 | 12/05/2005 | Invoic |
| 2504876 1 | $81,529.46 | 001917534 | 9234 | $81,529.46 | 12/05/2005 | Invoic |
| 2504877 | $44,686.26 | 001988870 | 35842 | $44,686.26 | 12/05/2005 | |
| 2504878 | $42,518.94 | 001989671 | 35863 | $42,518.94 | 12/05/2005 | |
| 2504879 | $3,169.06 | 002321968 | 9216 | $3,169.06 | 12/05/2005 | |
| 2504880 | $1,584.53 | 002322533 | 9226 | $1,584.53 | 12/05/2005 | |
| 2504888 | $1,711.36 | ACA2005102570959 | 35833 | $1,711.36 | 12/05/2005 | |
| 2504889 | $-1,711.36 | ADA2005102471653 | 35833 | $-1,711.36 | 12/05/2005 | |
| 2504890 | $-1,509.07 | ADA2005102471664 | 9228 | $-1,509.07 | 12/05/2005 | |
| 2504893 | $-2,159.52 | ESD0004381 | 0004381 | $-2,159.52 | 12/05/2005 | |
| 2504894 | $-287.67 | ESD0004389 | 0004389 | $-287.67 | 12/05/2005 | |
| 2504895 | $168.36 | GADHRR4ABH0G | C35841 | $168.36 | 12/05/2005 | |
| 2504896 | $4,159.97 | GGJCCSTACUDD | C35830 | $4,159.97 | 12/05/2005 | |
| 2504897 | $1,309.32 | SCCSC0198835 | KHT/RM | $1,309.32 | 12/05/2005 | |
| 2504898 | $2,696.32 | SCCSC0198836 | KHT/RM | $2,696.32 | 12/05/2005 | |
| 2504899 | $7,356.11 | SCCSC0198837 | KHT/RM | $7,356.11 | 12/05/2005 | |
| 2504900 | $13,830.53 | SCCSC0198838 | KHT/RM | $13,830.53 | 12/05/2005 | |
| 2504901 | $1,103.05 | SCCSC0198839 | KHT/RM | $1,103.05 | 12/05/2005 | |
| 2504902 | $1,037.00 | SCCSC0198840 | KHT/RM | $1,037.00 | 12/05/2005 | |
| 2504903 | $192.01 | SCCSC0198841 | KHT/RM | $192.01 | 12/05/2005 | |
| 2504904 | $192.60 | SCCSC0198842 | KHT/RM | $192.60 | 12/05/2005 | |
| 2504949 | $-129.25 | SCDSC0198685 | RM | $-129.25 | 12/05/2005 | |
| 2504950 | $-192.01 | SCDSC0198686 | RM | $-192.01 | 12/05/2005 | |
| 2504951 | $-76.69 | SCDSC1074594 | DEFAULT | $-76.69 | 12/05/2005 | |

Aging Contracts By Date

| | | | | | | |
|---|---|---|---|---|---|---|
| 2508429 | $1,000.00 | GGJCOTTACTKR | DUMMY | $1,000.00 | 12/05/2005 | |
| 2508434 | $46,019.25 | 000296414 | 35875 | $46,019.25 | 12/05/2005 | |
| 2508435 | $17,131.98 | 000296415 | 9268 | $17,131.98 | 12/05/2005 | |
| 2508436 | $10,734.95 | 000297282 | 9290 | $10,734.95 | 12/05/2005 | |
| 2508437 | $50,148.35 | 000297285 | 35896 | $50,148.35 | 12/05/2005 | |
| 2508438 | $9,863.32 | 000342067 | 9253 | $9,863.32 | 12/05/2005 | |
| 2508439 | $13,808.64 | 000343403 | 9263 | $13,808.64 | 12/05/2005 | |
| 2508440 | $13,808.64 | 000343992 | 9274 | $13,808.64 | 12/05/2005 | |
| 2508441 | $15,781.30 | 000344200 | 9287 | $15,781.30 | 12/05/2005 | |
| 2508442 | $23,480.60 | 000883921 | 35856 | $23,450.60 | 12/05/2005 | |
| 2508443 | $24,773.92 | 000884056 | 35863 | $24,773.92 | 12/05/2005 | |
| 2508444 | $5,147.00 | 000884057 | 9254 | $6,147.00 | 12/05/2005 | |
| 2508445 | $5,268.86 | 000884058 | 9243 | $5,268.86 | 12/05/2005 | |
| 2508446 | $5,268.86 | 000884239 | 9265 | $5,268.86 | 12/05/2005 | |
| 2508447 | $27,008.21 | 000884342 | 35876 | $27,008.21 | 12/05/2005 | |
| 2508448 | $26,509.60 | 000884455 | 35887 | $26,509.60 | 12/05/2005 | |
| 2508449 | $27,420.57 | 000884684 | 35898 | $27,420.57 | 12/05/2005 | |
| 2508450 | $5,268.86 | 000884753 | 9280 | $5,268.86 | 12/05/2005 | |
| 2508451 | $5,268.86 | 000884754 | 9288 | $5,268.86 | 12/05/2005 | |
| 2508454 | $3,279.06 | 001067863 | 35851 | $3,279.06 | 12/05/2005 | |
| 2508455 1 | $75,859.76 | 001067864 | 35859 | $75,859.76 | 12/05/2005 | Invoic |
| 2508456 | $4,038.24 | 001067865 | 35860 | $4,038.24 | 12/05/2005 | |
| 2508457 | $6,560.40 | 001068430 | 35868 | $6,560.40 | 12/05/2005 | |
| 2508458 1 | $73,519.30 | 001068431 | 35865 | $73,519.30 | 12/05/2005 | Invoic |
| 2508459 1 | $74,266.18 | 001068446 | 35877 | $74,266.18 | 12/05/2005 | Invoic |
| 2508460 | $6,270.82 | 001068943 | 35879 | $6,270.82 | 12/05/2005 | |
| 2508461 1 | $78,227.24 | 001069471 | 35888 | $78,227.24 | 12/05/2005 | Invoic |
| 2508462 | $6,560.40 | 001069472 | 35895 | $6,560.40 | 12/05/2005 | |
| 2508463 | $15,118.74 | 001144879 | 35857 | $15,118.74 | 12/05/2005 | |
| 2508464 | $10,799.10 | 001145448 | 35874 | $10,799.10 | 12/05/2005 | |
| 2508465 | $11,879.01 | 001145932 | 35886 | $11,879.01 | 12/05/2005 | |
| 2508471 | $12,748.20 | 0017639546R05299 | 000035845 | $12,748.20 | 12/05/2005 | |
| 2508472 | $44,665.70 | 001991098 | 35866 | $44,665.70 | 12/05/2005 | |
| 2508473 | $44,665.70 | 001991950 | 35878 | $44,665.70 | 12/05/2005 | |
| 2508474 | $44,665.70 | 001992523 | 35892 | $44,665.70 | 12/05/2005 | |
| 2508475 | $45,812.89 | 001993492 | 35902 | $45,812.89 | 12/05/2005 | |
| 2508476 | $1,584.53 | 002323200 | 9242 | $1,584.53 | 12/05/2005 | |
| 2508477 | $3,169.06 | 002323780 | 9257 | $3,169.06 | 12/05/2005 | |
| 2508478 | $1,584.53 | 002324445 | 9269 | $1,584.53 | 12/05/2005 | |
| 2508479 | $4,753.58 | 002325085 | 9279 | $4,753.58 | 12/05/2005 | |
| 2508480 | $1,539.45 | 6637639548R05301 | 000035846 | $1,539.45 | 12/05/2005 | |
| 2508481 | $-76.26 | ESD0004403 | 0004403 | $-76.26 | 12/05/2005 | |
| 2508482 | $-731.46 | NLD2383447 | 35686 | $-731.46 | 12/05/2005 | |
| 2508489 | $-129.25 | SCDSC0199155 | RM | $-129.25 | 12/05/2005 | |
| 2508490 | $-129.25 | SCDSC0199156 | RM | $-129.25 | 12/05/2005 | |
| 2508491 | $-87.56 | SCDSC0199157 | RM | $-87.56 | 12/05/2005 | |
| 2508492 | $-76.69 | SCDSC1078409 | DEFAULT | $-76.69 | 12/05/2005 | |
| 2510854 | $15,698.36 | 000287739 | 9300 | $15,698.36 | 12/05/2005 | |
| 2510855 | $36,608.34 | 000297741 | 35910 | $36,608.34 | 12/05/2005 | |
| 2510865 1 | $76,269.08 | 001070010 | 35899 | $76,269.08 | 12/05/2005 | Invoic |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2510866 | $5,578.65 | 001070011 | 35803 | $5,678.65 | 12/05/2005 | |
| 2510868 | $44,893.38 | 001994893 | 35916 | $44,893.38 | 12/05/2005 | |
| 2510872 | $3,738.56 | 6167644728R05304 | 000009266 | $3,738.56 | 12/05/2005 | |
| 2510876 | $22,701.25 | ACA2005110171731 | 35910 | $22,701.25 | 12/05/2005 | |
| 2510885 | $4.05 | RCM0013011005304 | 000035783 | $4.05 | 12/05/2005 | |
| 2510902 | $3.73 | RCM0013013005304 | 000035725 | $3.73 | 12/05/2005 | |
| 2510903 | $3.73 | RCM0013013105304 | 000035783 | $3.73 | 12/05/2005 | |
| 2510904 | $2.19 | RCM0013013205304 | 000035845 | $2.19 | 12/05/2005 | |
| 2510945 | $5.25 | RCM0013017305304 | 000035845 | $5.25 | 12/05/2005 | |
| 2510968 | $5.39 | RCM0013019405304 | 000035788 | $5.39 | 12/05/2005 | |
| 2510969 | $2.11 | RCM0013019505304 | 000035845 | $2.11 | 12/05/2005 | |
| 2510990 | $6.12 | RCM0013021605304 | 000035725 | $6.12 | 12/05/2005 | |
| 2510991 | $6.12 | RCM0013021705304 | 000035783 | $6.12 | 12/05/2005 | |
| 2510995 | $6.81 | RCM0013022105304 | 000035725 | $6.81 | 12/05/2005 | |
| 2510996 | $4.54 | RCM0013022205304 | 000035788 | $4.54 | 12/05/2005 | |
| 2510997 | $0.54 | RCM0013022305304 | 000035845 | $0.54 | 12/05/2005 | |
| 2511001 | $6.99 | RCM0013022705304 | 000035725 | $6.99 | 12/05/2005 | |
| 2511003 | $4.66 | RCM0013022805304 | 000035783 | $4.66 | 12/05/2005 | |
| 2511005 | $0.66 | RCM0013022905304 | 000035845 | $0.66 | 12/05/2005 | |
| 2511050 | $4.04 | RCM0013027405304 | 000035783 | $4.04 | 12/05/2005 | |
| 2511113 | $30.76 | RCM0013033905304 | 000009062 | $30.76 | 12/05/2005 | |
| 2511155 | $3.90 | RCM6161256605304 | 000009063 | $3.90 | 12/05/2005 | |
| 2511173 | $8.87 | RCM6630605505304 | 000035671 | $8.87 | 12/05/2005 | |
| 2511176 | $-30.10 | RDM6630605605304 | 000035846 | $-30.10 | 12/05/2005 | |
| 2511728 | $15,661.22 | 000345112 | 9307 | $15,661.22 | 01/03/2006 | |
| 2511730 | $15,753.85 | 000885182 | 9295 | $15,753.85 | 01/03/2006 | |
| 2511731 | $26,422.04 | 000885183 | 35912 | $26,422.04 | 01/03/2006 | |
| 2511748 1 | $75,890.68 | 001070528 | 35915 | $75,890.68 | 12/05/2005 | Invoic |
| 2511749 | $2,336.56 | 001070529 | 35917 | $2,396.56 | 12/05/2005 | |
| 2511750 2 | $98,353.40 | 001070532 | 9304 | $98,353.40 | 01/03/2006 | Invoic |
| 2511753 | $14,038.83 | 001146381 | 35897 | $14,098.83 | 12/05/2005 | |
| 2511754 | $7,559.37 | 001146716 | 35911 | $7,559.37 | 12/05/2005 | |
| 2511757 | $3,606.02 | 0017647685R05305 | 000009277 | $3,606.02 | 12/05/2005 | |
| 2511758 1 | $81,529.46 | 001922484 | 9286 | $81,529.46 | 12/05/2005 | Invoic |
| 2511759 | $44,600.49 | 001995062 | 35925 | $44,600.49 | 01/03/2006 | |
| 2511760 | $-9,757.53 | ADA2005110271090 | 36910 | $-9,757.53 | 12/05/2005 | |
| 2515720 | $37,388.94 | 000298606 | 35932 | $37,388.94 | 01/03/2006 | |
| 2515721 | $9,788.26 | 000345407 | 9320 | $9,788.26 | 01/03/2006 | |
| 2515722 | $25,104.17 | 000885358 | 35921 | $25,104.17 | 01/03/2006 | |
| 2515733 1 | $75,230.00 | 001071064 | 35924 | $75,230.00 | 01/03/2006 | Invoic |
| 2515736 | $44,600.49 | 001995799 | 35941 | $44,600.49 | 01/03/2006 | |
| 2515737 | $1,576.32 | 002327055 | 9309 | $1,576.32 | 01/03/2006 | |
| 2516473 | $5,990.32 | 001071605 | 35943 | $5,990.32 | 01/03/2006 | |
| 2516485 | $-2,202.88 | ESD0004458 | 0004458 | $-2,202.88 | 01/03/2006 | |
| 2516517 | $-128.88 | SCDSC0199618 | RM | $-128.88 | 01/03/2006 | |
| 2516518 | $-114.61 | SCDSC0199619 | RM | $-114.61 | 01/03/2006 | |
| 2516519 | $-128.88 | SCDSC0199620 | RM | $-128.88 | 01/03/2006 | |
| 2516964 | $5,363.74 | 001148212 | 35945 | $5,363.74 | 01/03/2006 | |
| 2516967 | $10,541.65 | 0017665691R05308 | 000055905 | $10,541.65 | 12/05/2005 | |
| 2516971 | $-13,416.22 | ESD0024513 | MARLETTE | $-13,416.22 | 01/03/2006 | |
| 2516974 | $-1,845.88 | NLD2380894 | C35680 | $-1,845.88 | 12/05/2005 | |

| 2516975 | $-800.00 | NLD2381727 | C35718 | $-800.00 | 12/05/2005 |
|---|---|---|---|---|---|
| 2519412 | $1,394.34 | 0017855631R05311 | 000009312 | $1,394.34 | 01/03/2006 |
| 2519992 | $-37.53 | E8D0004501 | 0004501 | $-37.53 | 01/03/2006 |
| 2521150 | $992.89 | 0017660396R05318 | 000009336 | $992.89 | 01/03/2006 |
| 2521152 | $929.56 | 6167668449R05318 | 000009383 | $929.56 | 01/03/2006 |
| 2521536 | $-76.30 | SCDSC1082204 | DEFAULT | $-76.30 | 01/03/2006 |
| 2521537 | $-76.30 | SCDSC1082229 | DEFAULT | $-76.30 | 01/03/2006 |
| 2521772 | $-112.68 | ESD0020021 | PRR PER R | $-112.68 | 01/03/2006 |
| 2606788 | $33,382.52 | 001076307 | 36058 | $33,382.52 | 01/03/2006 |
| 2606793 | $-1,346.44 | ESD0004556 | 0004556 | $-1,346.44 | 01/03/2006 |
| 2607331 | $-21,955.84 | ADA2005112171296 | 9473 | $-21,955.84 | 01/03/2006 |
| 2607995 | $-11,361.32 | ESD0024611 | MARLETTE | $-11,361.32 | 01/03/2006 |
| 2609324 | $-958.43 | ADA2005112971973 | 36000 | $-958.43 | 01/03/2006 |
| 2609350 | $-38.32 | SCDSC1089168 | AMCAST | $-38.32 | 01/03/2006 |
| | $5,499,932.24 | | | $5,499,932.24 | |
| General Motors Corporation Total : | $5,499,932.24 | | | $5,499,932.24 | |
| | $5,499,932.24 | | | $5,499,932.24 | |

HCS Payment Services, Inc. 5.4
26321 Woodward Ave.
Huntington Woods, Michigan 48070-1362
Ph: (248) 658-1300 Fax: (248) 658-1204
Web: hcspay.com Email: support@hcspay.com
© 2003 - 2006 HCS Payment Services, Inc. All rights reserved
Page generated in 6.102 secs (Query Time: 0.145 secs)

Exhibit C



To: General Motors Corporation

August 26, 2005

Attention: Accounts Payable

We have elected to participate in the HCSPay, LLC (HCS) advance payment program and therefore have assigned all General Motors Corporation (GM) invoices to HCSPay, LLC. Effective immediately, please remit all payments due Amcast Automotive of Indiana, Inc. dba Amcast Automotive, Gas City and Amcast Automotive, Fremont (GM Supplier Code-RD877243092), in accordance with the following instructions:

By wire or ACH transfer:                    If wire or ACH are unavailable, By mail to:
Standard Federal Bank                       Amcast Automotive of Indiana, Inc. or SunGen, LLC.

ABA # 072000803                             Drawer # 1002, P.O. BOX 78001
Account # 5408018549                        Detroit, Michigan 48279-1002

All Statements and correspondence should continue to be delivered to:

Amcast Automotive of Indiana, Inc.
706 E. Depot Street
Fremont, Indiana 46737

The foregoing payment instructions shall remain in effect until you receive contrary written instructions from HCSPay, LLC ("HCS"). Please contact HCS at 248-658-1100, if you have any questions about the Program or the remittance instructions.

Amcast Automotive of Indiana, Inc.

Signature: _____
Print Name: _CURT HOGUE_
Print Title: _GROUP CONTROLLER_

HCSPay, LLC
Signature: _____
Print Name: Candace M. Pavliscak
Print Title: Chief Risk Officer

706 E. Depot Street, Fremont, Indiana 46737 Phone: 260/495-5602 Fax: 260/495-1953

Exhibit D



**General Motors Corporation**
**EFT Payment Authorization**

Please complete and return this Electronic Funds Transfer (EFT) Authorization Form. This form is necessary in order to make payments to your company for shipments or services provided to General Motors Corporation, North American Operations. Please type or print clearly.

**Verification:** In addition to filling out this form you must provide confirmation of your bank account and routing number with one of three:
1) Have your bank provide a contact name, phone number, stamp and/or signature on appropriate lines below
2) Your bank must use their own stationery to confirm bank routing information and your company's bank account number
3) You must provide a copy of a voided check with your company's bank account and routing information.

For all currencies, the receiving bank must include the bank's SWIFT ID Number. Canadian banks must provide their routing/transit number; German and Spanish banks must provide their in-country bank ID number, and United Kingdom banks must provide the appropriate Sort Code.

The undersigned ("Payee") authorizes General Motors Corporation and any of its subsidiaries and affiliates (collectively, "General Motors") to make payment for goods and services covered by any purchase order or agreement, now or hereinafter in effect, through electronic fund transfer.

In connection with electronic fund transfers, the Payee agrees as follows:

1) Payee will use reasonable efforts to verify and ensure that the Depository Institution selected by Payee is able to receive electronic fund transfers from General Motors' originating bank directly, or from a correspondent bank or through an automated clearing house or any other nationwide payment network designated or approved by General Motors from time to time.

2) Payee may, at least 30 days prior to the effective date of the new electronic fund payment by General Motors, change any portion of the information provided in this document by submitting to General Motors an amended payment authorization in a form acceptable to General Motors. The Payee is responsible for any loss which may arise by reason of any error, mistake, or fraud regarding the information provided to General Motors or the Payee's failure to follow the procedures set forth in this document.

3) The payment terms specified in the applicable purchase order or agreement, other than the MN82 payment term, are modified by adding three calendar days to the time period for payment. For example, for the "net 30 days" payment term, the electronic funds transfer will occur on the 33rd day. If the payment date is a non-banking day, the electronic funds transfer will occur the following day on which both General Motors' originating bank and Payee's Depository Institution are available to transmit and receive electronic funds transfers.

4) Electronic fund transfers will be deemed to have been made when the Payee's Depository Institution receives or has control of the payment. Any loss of payment following the point at which the Payee's Depository Institution receives or has control of the payment will be borne by the payee.

5) In the event of duplicate payment, overpayment, fraudulent payment or payment made in error, Payee will promptly cause the return of funds to General Motors at its designated originating bank.

6) In the event that payment has not been received by Payee, Payee shall notify General Motors immediately in writing and General Motors will have a reasonable period in which to make the payment, and until the expiration of that period, Payee agrees that it will not have or pursue any rights or remedies against General Motors for any failure to make payment including, without limitation, actual, incidental, or consequential damages.

**Company Name**
A. Dave Number: **SC9PAY, LLC FBO Account Automotive of Indium, Inc.**   Doca Number: **819725872**   Contact Name: **Candace M. Pavliscak**

Bank Address: **26321 Woodward Ave.**   ID **#77245092 and ID 004277208**   Telephone Number: **248-658-1100 ext 204**

**Huntington Woods, MI 48076-1862**   Fax Number: **248-658-1204**

**Banking Information**   E-mail Address: **cpavliscak@hennessgroup.com**

Account Name: **SmGen, LLC**   Account Currency: (List All Acceptable) **U.S. Dollars**

Account Number: **5403019549**   Bank Name: **Standard Federal Bank**

Swift/Local Bank ID/Routing Number/UK Sort Code:   **072000805**   Bank Address: **Drawer # 1002, P.O. Box 79001**

Bank Contact Name & Phone Number:   **Detroit, MI 48279-1002**

Bank Signature/Verification Stamp:

The Payee accepts the terms of this agreement executed on this   **31st**   day of   **August**   , 20 **05** .

*(signature)* Candace M. Pavliscak
(Payee Authorized Signature)

Candace M. Pavliscak   Chief Risk Officer
(Printed Name & Title)

The requested documents may be mailed or faxed to:
Attn: VNA/Disbursement Services Mail Code 852-611-507 PO Box 62310 Phoenix, AZ 85082-2310
Fax (602) 797-6313 (If faxed, do not mail original)

Exhibit E

# INDIANA SECRETARY OF STATE
## UNIFORM COMMERCIAL CODE DIVISION
## FILING ACKNOWLEDGMENT

INDIANA SECRETARY OF STATE
BUSINESS SERVICES DIVISION
302 West Washington Street, Room E018
Indianapolis, IN 46204
http://www.sos.in.gov

HENNESSEY CAPITAL
26321 WOODWARD AVE.
HUNTINGTON WOODS, MI 48070

Date:                9/6/2005 11:43:46 AM
File Number:         200500007881384
Document Number:     N/A
Receipt Number:      132137
Payment Number:      .131667

Date / Time Filed                    Lapse Date                     # of Pages
9/6/2005 5:30:00 PM                   09/06/2040                        2

Filing Type
Initial

Debtor(s)
AMCAST AUTOMOTIVE OF INDIANA, INC.     706 E. DEPOT ST. FREMONT, IN 46737
AMCAST AUTOMOTIVE, GAS CITY     706 E. DEPOT ST. FREMONT, IN 46737

Secured Party(s)
HCSPAY, LLC     26321 WOODWARD AVE. HUNTINGTON WOODS, MI 48070

Certificate # 2005090652006, Page 1 of 1
FILING ACKNOWLEDGEMENT

Indiana Secretary of State
Filing Number: 200500007881384
Filing Date : 09/06/2005 17:30:00



**UCC FINANCING STATEMENT**
State Form 50181 (6-01)
Approved by State Board of Accounts, 2001

FOLLOW INSTRUCTIONS (FRONT AND BACK) CAREFULLY.

A. NAME AND PHONE OF CONTACT AT FILER (optional)
Candace M. Pavlicsek

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Hennessey Capital
26321 Woodward Avenue
Huntington Woods, MI 48070

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
Amcast Automotive of Indiana, Inc.

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 706 E. Depot Street | Fremont | IN | 46737 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 1d. TYPE OF ORGANIZATION | 1e. JURISDICTION OF ORGANIZATION | 1f. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|
| | corporation | Indiana | 198306-828 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME
Amcast Automotive, Gas City

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 706 E. Depot Street | Fremont | IN | 46737 | USA |

| ADD'L INFO RE ORGANIZATION DEBTOR | 2d. TYPE OF ORGANIZATION | 2e. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|
| | corporation | Indiana | 198306-828 | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME OF TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
HCSPay, LLC

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 26321 Woodward Avenue | Huntington Woods | MI | 48070 | USA |

4. This FINANCING STATEMENT covers the following collateral:

Certain Accounts purchased by Secured Party from Debtor pursuant to an Accounts Receivable Purchase Agreement dated as of August 30, 2005

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE / LESSOR ☐ CONSIGNEE / CONSIGNOR ☐ BAILEE / BAILOR ☐ SELLER / BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)

7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) (ADDITIONAL FEE) (optional) ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY - INDIANA UCC FINANCING STATEMENT

## INDIANA SECRETARY OF STATE
## UNIFORM COMMERCIAL CODE DIVISION
## DEBTOR SEARCH CERTIFICATE

INDIANA SECRETARY OF STATE
BUSINESS SERVICES DIVISION
302 West Washington Street, Room E018
Indianapolis, IN 46204
http://www.sos.in.gov

September 08, 2005

| Requested Debtor Name: | Org: AMCAST AUTOMOTIVE OF INDIANA | | |
|---|---|---|---|
| Requested Address: | Not Requested | | |
| Lapsed Filings: | Requested | | |
| Copies: | Requested | | |

Org: AMCAST AUTOMOTIVE OF INDIANA, INC.  708 EAST DEPOT STREET , FREMONT , IN 46737

SP: KEYBANK NATIONAL ASSOCIATION,   127 PUBLIC SQUARE, CLEVELAND , OH 44114 -1306
| File # 200100000534800 | Filed: 03/08/2001 17:30:00 | Lapse: 03/08/2006 | # Pages: 2 |
|---|---|---|---|

Org: AMCAST AUTOMOTIVE OF INDIANA INC  708 EAST DEPOT STREET , FREMONT , IN 46737

SP: KEYBANK, NA   127 PUBLIC SQUARE, CLEVELAND , OH 44114
| File # 2001000029734485 | Filed: 06/04/2001 17:33:00 | Lapse: 06/04/2006 | # Pages: 1 |
|---|---|---|---|

Org: AMCAST AUTOMOTIVE OF INDIANA, INC.  6281 EAST 500 SOUTH , MARION , IN 46953

SP: JOACHIM MACHINERY CO., INC.   4627 INDEPENDENCE SQUARE, INDIANAPOLIS , IN 46203 -5940, U.S.A.
| File # 200300011772174 | Filed: 12/23/2003 10:20:00 | Lapse: 12/23/2008 | # Pages: 1 |
|---|---|---|---|
| Amd # 2004000034003588 | Filed: 04/12/2004 | | Type: Termination | # Pages: 1 |

Org: AMCAST AUTOMOTIVE OF INDIANA, INC.  1 N. CAPITOL AVENUE , INDIANAPOLIS , IN 46204

SP: CROWN CREDIT COMPANY   40 S. WASHINGTON STREET, NEW BREMEN , OH 45869
| File # 200400002377471 | Filed: 03/19/2004 08:00:00 | Lapse: 03/19/2009 | # Pages: 1 |
|---|---|---|---|

Org: AMCAST AUTOMOTIVE OF INDIANA, INC.  708 E DEPOT ST, PO BOX 705 , FREMONT , IN 46737

SP: JOACHIM MACHINERY CO., INC.   4627 INDEPENDENCE SQUARE, INDIANAPOLIS ; IN 46203 -5940, U.S.A.
| File # 200500001967121 | Filed: 03/03/2005 08:55:00 | Lapse: 03/03/2010 | # Pages: 1 |
|---|---|---|---|
| Amd # 2005000035914040 | Filed: 04/19/2005 | | Type: Termination | # Pages: 1 |

Org: AMCAST AUTOMOTIVE OF INDIANA, INC.  708 E DEPOT ST, PO BOX 705 , FREMONT , IN 46737

SP: JOACHIM MACHINERY CO., INC.   4627 INDEPENDENCE SQUARE, INDIANAPOLIS , IN 46203 -5940, U.S.A.
| File # 200500003024056 | Filed: 04/04/2005 11:19:00 | Lapse: 04/04/2010 | # Pages: 1 |
|---|---|---|---|
| Amd # 2005000035914333 | Filed: 05/09/2005 | | Type: Termination | # Pages: 1 |

Org: AMCAST AUTOMOTIVE OF INDIANA, INC.  708 EAST DEPOT ST. , FREMONT , IN 46737

SP: HERITAGE BANK, SSB, AS AGENT   13455 NOEL RD., STE. 2200, DALLAS , TX 75240
| File # 200500007003577 | Filed: 08/04/2005 17:30:00 | Lapse: 08/04/2010 | # Pages: 1 |
|---|---|---|---|

Org: ANCAST AUTOMOTIVE OF INDIANA, INC. 708 E. DEPOT ST., FREMONT, IN 46737

SP: HOSPAY, LLC   26321 WOODWARD AVE., HUNTINGTON WOODS, MI 48070

File # 2005020007881184          Filed: 09/06/2006 17:36:00          Lapse: 09/06/2010          # Pages: 2

The undersigned Filing Officer hereby certifies that the above certificate, within a reasonable degree of certainty, is a record of all presently effective UCC financing statements which include the requested debtor name and which were filed in this office through 09/06/2005.

*Todd Rokita*

TODD ROKITA,
Indiana Secretary of State

Copies limited by:         Requested Address:      Not Requested
                           From Date:              Not Requested
                           Secured Party:          Not Requested
                           Face Pages Only:        Not Requested